UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL A. GLADDING,

Plaintiff,

v. 1:25-CV-01250 (BKS/ML)

LETITIA JAMES,

Defendant.

---

APPEARANCES: OF COUNSEL:

Michael A. Gladding
Plaintiff, *Pro Se*
22-R-1840
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403

MIROSLAV LOVRIC, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

The Clerk has sent an amended *pro se* complaint in the above captioned action together with an application to proceed *in forma pauperis* ("IFP") by Michael A. Gladding ("Plaintiff") to the Court for review. (Dkt. No. 24, Attach. 1; Dkt. No. 24, Attach. 5.) Contemporaneous with that filing, Plaintiff filed a different, invalid IFP application along with an amended motion for preliminary injunction. (Dkt. No. 24, Attach. 2; Dkt. No. 25.) On August 13, 2026, I denied the invalid IFP application as it lacked required information, without prejudice to renew. (Dkt. No. 31.) On the same date, Chief U.S. District Court Judge Brenda K. Sannes denied Plaintiff's amended motion for preliminary injunction without prejudice to renew. (Dkt. No. 32.) The Clerk

has mailed copies of these orders to Plaintiff, along with a valid IFP application form. (Dkt. No. 31; Dkt. No. 32.)

Further review of the court's docket identified an IFP application on the correct form and containing the required information that had been filed alongside Plaintiff's motion papers. (Dkt. No. 24, Attach. 5.) In the interest of judicial efficiency and deference to Plaintiff's *pro se* status, this Court has now reviewed that valid application (Dkt. No. 24, Attach. 5) to determine whether Plaintiff satisfies the IFP requirements.

For the reasons discussed below, I (1) deny Plaintiff's *in forma pauperis* application without prejudice to renew, and (2) recommend that Plaintiff's Amended Complaint be dismissed in its entirety with leave to amend. (Dkt. No. 24, Attach. 1; Dkt. No. 24, Attach. 5.)

## I. BACKGROUND

Construed as liberally[1] as possible, Plaintiff's Amended Complaint alleges that the New York Sex Offender Registration Act ("SORA") violates a number of his constitutional rights, including those protected by the First, Fourth, Fifth, Eighth, and Fourteenth Amendment. (Dkt. No. 24, Attach. 1 at 3-4.) It further asserts that SORA applies retroactively and imposes additional punishment for past offenses in violation of the Ex Post Facto Clause and the double jeopardy protections in the Constitution. (*Id*. at 4.) Finally, the Amended Complaint asserts that SORA violates "Article 1 separation of powers principles" by intruding on the legislative and judicial roles. (*Id*. at 5.)

The Amended Complaint dated January 10, 2026, seeks a variety of non-monetary relief, including (1) declaration that SORA is unconstitutional; (2) an order to "Defendants" to

[1] The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

immediately stop enforcing SORA against Plaintiff, including "registration requirements, residency restrictions, employment limitations, and publishing [Plaintiff's] information online"; (3) an injunction protecting Plaintiff from SORA; (4) removal of Plaintiff's information from the New York State Sex Offender Registry and related databases; and (5) a declaration that SORA is invalid. (*Id*. at 5-6.) Plaintiff also seeks payment of his legal costs associated with this proceeding. (*Id*. at 7.)

The only defendant named in the Amended Complaint is "Letitia James, in her official capacity as Attorney General of New York."[2] (Dkt. No. 24, Attach. 1 at 1-2.) Plaintiff contends that Defendant James's position as New York Attorney General makes her "responsible for the enforcement of SORA" . . . "as the chief law enforcement officer administering this unconstitutional system." (*Id*. at 2.) The Amended Complaint also alludes to "state officials charged with administering and enforcing SORA" but makes no specific allegations against these unidentified officials. (*Id*. at 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to grant IFP status if it determines that the plaintiff is unable to pay the required fee.

[2] Eleventh Amendment immunity bars suits against state officials sued in their official capacities for monetary and other retrospective relief. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Read in the light most favorable to the *pro se* Plaintiff, his Amended Complaint seeks only prospective equitable relief from continuing constitutional violations and thus is not subject to dismissal on Eleventh Amendment grounds at this initial stage. *See Papasan v. Allain*, 478 U.S. 265, 266, 106 S. Ct. 2932, 2934, 92 L. Ed. 2d 209 (1986) (citing *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)).

28 U.S.C. § 1915(a)(1).[3] Pursuant to 28 U.S.C. § 1915, where a plaintiff seeks leave to proceed IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). The Court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.l. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915[a] does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In support of an IFP application, 28 U.S.C. § 1915 requires that a plaintiff submit an affidavit reflecting his assets. 28 U.S.C. § 1915(a)(1). Here, Plaintiff's IFP application reflects weekly gross pay or wages of $412 and take-home pay or wages of $343 per week as of January 10, 2025. (Dkt. No. 24, Attach. 5 at 1.) Based on this weekly pay, Plaintiff's annual take-home

---

3 The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

earnings in 2025 would have reached approximately $17,836. The United States Department of Health and Human Services publishes yearly Poverty Guidelines. Those guidelines reflect that, for 2025, the poverty threshold for a household of one[4] was $15,650. *See* United States Dep't of Health & Human Servs., https://aspe.hhs.gov/topics/ poverty-economic-mobility/poverty-guidelines/prior-hhs-poverty-guidelines-federal-register-references (last visited September 1, 2026).[5]

Moreover, "Plaintiff's application does not disclose any extraordinary or unusual expenses, debts or financial obligations, other than ordinary cost-of-living expenses, such as property taxes, utilities, insurance, and food." *David v. U.S. Envtl. Prot. Agency*, No. 19-CV-0064, 2019 WL 1004706, at *2 (N.D.N.Y. Jan. 29, 2019) (Peebles, M.J.).

In this instance, and based solely on Plaintiff's representations in his IFP Application dated January 10, 2025, I find that Plaintiff possesses sufficient funds to pay the $405.00 filing fee to commence an action without "foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. 339). I also note that Plaintiff was employed and earning a weekly income at the time of his January 2025 IFP application, but his current address on the docket is the Marcy Correctional Facility. Because his financial situation has likely changed during his incarceration, I deny Plaintiff's motion to proceed in this case IFP without prejudice to filing an updated application on the appropriate form.[6]

---

[4] The IFP application indicates that there are no other persons dependent on Plaintiff for support. (Dkt. No. 24, Attach. 5 at 2.)

[5] The Poverty Guidelines do not specify whether they measure income before or after taxes. This distinction is irrelevant in this case.

[6] If Plaintiff elects to file a new IFP application, he is reminded that proceeding IFP is always a privilege, not an unqualified right. Misuse of the IFP process by a litigant, such as repetitive filing of frivolous lawsuits, may result in the denial of a request to proceed IFP.

If Plaintiff wishes to proceed with this action, he must either comply with the filing fee requirements or file an updated IFP application **within thirty (30) days** of the filing date of the assigned District Judge's Decision and Order regarding this Order and Report-Recommendation. Plaintiff is advised that his failure to timely comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

Ordinarily, the finding that Plaintiff does not qualify for IFP status would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e).

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that — . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[7]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim

---

[7] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *rev'd on other grounds*, 682 F. App'x 30. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that

all causes of action be dismissed for failure to state a claim upon which relief may be granted due to lack of personal involvement by the only named defendant.

Any claim under section 1983 requires that the plaintiff allege and establish the personal involvement of the defendants. *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023). To establish this personal involvement, a plaintiff cannot simply assert that an individual was a person in a supervisory capacity over others and is liable because of the actions of those officials, instead a Plaintiff "must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). In other words, "the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained." *Durr v. Slator*, 558 F. Supp. 3d 1, 20 (N.D.N.Y. 2021) (citation omitted).

Plaintiff's Amended Complaint challenges the constitutionality of SORA, a state statute that requires sex offenders to register with the Division of Criminal Justice Services ("DCJS"), a part of the Executive Department of New York State government, and continually provide personal information, including all "internet identifiers," to DJCS. *See* N.Y. Correct. Law § 168-b; N.Y. Exec. Law § 836; *see also Cornelio v. Rosado*, No. 1:24-CV-01335 (AMN/PJE), 2025 WL 2771677, at *1 (N.D.N.Y. Sept. 29, 2025).

The plain language of SORA does not appear to contemplate any role for the state attorney general in the administration or execution of the registration and reporting requirements. Beyond speculative generalized allegations, Plaintiff's Amended Complaint does not explain how Defendant James is personally involved in the administration or application of SORA. Her position as Attorney General, without more, fails to demonstrate personal involvement. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (noting that a defendant in an action may

not be held liable for constitutional violations merely because he held a high position of authority.) The vague references to other state employees likewise fail to allege any personal involvement in the purported constitutional harm to Plaintiff.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Although this Court has serious doubts about whether Plaintiff can further amend his Amended Complaint to assert actionable claims against the named Defendant, it is possible that constitutional claims may lie against an individual who has personal involvement in the alleged constitutional harm to Plaintiff. Given Plaintiff's *pro se* status, out of an abundance of caution, I recommend that Plaintiff be granted leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates,

times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *See Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted) (Stewart, M.J.), *rep't and rec. adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

Finally, Plaintiff is informed that any such amended complaint will replace the existing Amended Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**<u>PLAINTIFF IS FURTHER ADVISED THAT HE SHOULD NOT SEEK TO FILE A MOTION TO FURTHER AMEND HIS COMPLAINT UNTIL THE DISTRICT</u>**

**COURT RULES ON THIS COURT'S RECOMMENDATIONS WITH RESPECT TO PLAINTIFF'S CURRENT AMENDED COMPLAINT. ANY AMENDED COMPLAINT OR MOTION TO AMEND BEFORE THE DISTRICT COURT'S DECISION WITH RESPECT TO THIS COURT'S RECOMMENDATIONS WILL BE STRICKEN AS PREMATURE AND WILL NOT BE CONSIDERED BY THE COURT.**

As noted below, however, Plaintiff may file objections to this Court's recommendations or file an updated IFP application on the correct form.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 24, Attach. 5) is **DENIED without prejudice to renew**;[8] and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 24) because it fails to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[9]

---

8 To the extent that the Court does not adopt this Order and Report-Recommendation and Plaintiff's Complaint survives *sua sponte* review or Plaintiff wishes to file an amended complaint and proceed with this action, he must pay the $405.00 filing fee or file an updated IFP application on the correct form, within thirty (30) days from the date of the filing of Court's Decision and Order. Failure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed.

9 The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: September _8_, 2026
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

[10] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2019 WL 1004706
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

DAVID f/k/a David J. Forjan, Plaintiff,
v.
The U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.

Civil Action No. 3:19-CV-0064 (DNH/DEP)
|
Signed 01/29/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: DAVID, Pro Se, 2633 State Route 17C, Barton, NY 13734.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

***1** *Pro se* plaintiff David f/k/a David J. Forjan brings this citizen suit against the United States Environmental Protection Agency ("EPA") and three high ranking officials employed by that agency, alleging violations of, *inter alia*, the Toxic Substances Control Act, *see* 15 U.S.C. § 2601, *et seq.*, the Clean Water Act, *see* 33 U.S.C. § 1251, *et seq.*, the Clean Air Act, *see* 42 U.S.C. § 7401, *et seq.*, and the Food Quality Protection Act,[1] *see* Pub. L. No. 104-170, 110 Stat. 1489. Accompanying plaintiff's complaint is a motion requesting permission to proceed in the action *in forma pauperis* ("IFP"). For the reasons set forth below, plaintiff's IFP application is denied, and I recommend that his complaint be dismissed, with leave to replead.

1 The Food Quality Protection Act amended both the Federal Food, Drug, and Cosmetic Act, *see* 21 U.S.C. § 301, *et seq.*, and the Federal Insecticide, Fungicide and Rodenticide Act, *see* 7 U.S.C. § 136, *et seq.*

I. BACKGROUND

Plaintiff commenced this action on January 17, 2019. Dkt. No. 1. Although plaintiff denominated his action as arising under 42 U.S.C. § 1983, it is clear from his lengthy—and at times nonsensical—complaint that he is attempting to bring a citizen suit to enforce various environmental laws and regulations. *See generally* Dkt. No. 1.

Plaintiff alleges that there is a "probability" that he and his dog, Annie, are being poisoned by the widespread use of pesticides, herbicides, and other chemical agents, which have been, and continue to be, approved for the public's use by defendants, the United States EPA; Andrew Wheeler, Acting Administrator of the EPA; Richard Keigwin, Jr., Director of the EPA's Office of Pesticide Program; and Peter D. Lopez, Regional Administrator of the EPA. *See generally id.* Plaintiff seeks declaratory and injunctive relief. *Id.* at 15-16.

II. DISCUSSION

A. Plaintiff's IFP Application

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a).[2] A court is authorized, however, to permit a litigant to proceed IFP if it determines that he or she is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).

2 The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

" 'The purpose of [section] 1915 is to insure that litigants will not be deprived of access to the judicial system because of their financial circumstances.' " *Naik v. Modern Mktg. Concepts, Inc.*, No. 3:17-CV-0613, 2017 WL 9509955, at *1 (N.D.N.Y. Sept. 19, 2017) (Peebles, M.J.) (quoting *Monti v. McKeon*, 600 F. Supp. 112, 114 (D. Conn. 1984) ); *see also Harlem River Consumers Coop, Inc. v. Associated Grocers of Harlem, Inc.*, 71 F.R.D. 93, 96 (S.D.N.Y. 1976). "The decision of whether to grant an application to proceed IFP rests within the discretion of the court. *Naik*, 2017 WL 9509955, at *1 (citing *Monti*, 600 F. Supp. at 113).

***2** Section 1915(a)(1) does not set financial guideposts for determining IFP eligibility, but provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1); *see also Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) ("We think an [IFP application] is sufficient which states that one cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." (quotation marks and alteration omitted) ). A plaintiff does not need to demonstrate abject poverty to qualify for IFP status. *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (citing *Adkins*, 335 U.S. at 339); *accord Lee v. McDonald's Corp.*, 231 F.3d 456, 458 (8th Cir. 2000). Indeed, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In this instance, plaintiff's IFP application sets forth a somewhat murky financial picture. Plaintiff indicates that he is self-employed from his New York residence, but does not disclose that he receives any income from that self-employment. Dkt. No. 2 at 1. After failing to complete several questions regarding his sources of income over the past twelve months, plaintiff indicates that he receives $1,868 per month in disability and workers' compensation benefits, which is nearly double the amount of the current poverty income threshold level as reflected in the guidelines published by the U.S. Department of Health and Human Services.[3] *Id.*

3 Those guidelines reflect that effective January 11, 2019, for an individual residing within the forty-eight contiguous states and the District of Columbia, the threshold is $12,490. U.S. Dep't of Health & Human Servs., *Poverty Guidelines*, https://aspe.hhs.gov/poverty-guidelines (last visited Jan. 24, 2019).

Plaintiff's application does not disclose any extraordinary or unusual expenses, debts, or financial obligations, other than ordinary cost-of-living expenses, such as property taxes, utilities, insurance, and food. Dkt. No. 2 at 2. Although plaintiff's regular monthly expenses exceed his monthly income, in part due to a moderate amount of credit card debt and a small loan, in his application, he discloses that he possesses $27,000 in savings and $65,000 in other assets, including a home in New Mexico. *Id.* at 2. Plaintiff, who in his complaint alleges that he resides in New York, does not indicate in the IFP application whether his New York home is among his assets or whether he has any expenses associated with that residence. *See generally id.*

In this instance, despite some unanswered questions regarding plaintiff's finances, I find that he possesses sufficient funds to pay the $400.00 filing fee to commence this action without "foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339). Accordingly, I will deny plaintiff's motion to proceed in the case IFP. To the extent plaintiff may wish to renew his request to proceed IFP, and given the court's unanswered questions about his financial situation, any request to proceed without prepayment of fees must include a fully completed long form *in forma pauperis* application (AO 239).

B. Plaintiff's Complaint

1. Standard of Review

Ordinarily, my denial of plaintiff's IFP application would end the court's discussion, and plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that plaintiff's complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e).

***3** Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) ) (quotation marks and emphasis omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

2. Analysis of Claims Against Defendants Wheeler, Keigwin, and Lopez

***4** As was noted above, a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed. R. Civ. P. 8(a)(2). As a result, when a complaint names a defendant in the caption, "but contains no allegations indicating how the defendant violated the law or injured the plaintiff," any claims against that defendant are subject to dismissal. *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (quoting *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981) ); *Gilfus v. Adessa*, No. 04-CV-1368, 2006 WL 2827132, at *4 (Sept. 30, 2006) (Munson, J.).

Here, beyond naming defendants Wheeler, Keigwin, and Lopez in the caption and first paragraph of his complaint, *see* Dkt. No. 1 at 1-2, plaintiff has failed to set forth any factual allegations as to those defendants. In the absence of the requisite specificity with respect to how each defendant violated the law or caused damage to plaintiff, the court recommends that the complaint be dismissed against those defendants.

3. Analysis of Claims Against the EPA

Plaintiff's complaint is comprised of forty-four pages and 228 paragraphs of incoherent prose and data culled from news articles regarding the use of pesticides and other chemical agents. By way of one example, in the "[i]ntroduction" section of the complaint, plaintiff alleges as follows:

> [¶ 4] Father says, be still and know that I am God,
>
> Father says, be still and be filled with my peace,
>
> Father says, be still and know that I am the Lord,
>
> Father says, and remain hereafter within me.
>
> Father says, I created everything.
>
> Father says, like Insects and Birds and Frogs and Rabbits and Possums and Owls and Hawks and Eagles and pets and human Children.
>
> Father says, l created everything.
>
> Father says, they are all my children.
>
> [¶ 5] Father says, Defendants are endangering and killing them all. Father says, with pesticides. Father says, your Honor, we must stop allowing the use of pesticides. Father says, your Honor, pesticides are poisons.
>
> [¶ 6] Father says, your Honor, Birds and Frogs eat the poisoned Insects, and the more they eat, the more the poisons accumulate in them, and the poisons kills them too. Father says, your Honor, bigger Birds and Mammals, including some pets, sometimes eat poisoned Birds and Frogs, and Rabbits eat poisoned grasses and plants, and that poison accumulates in them, or your pets, and will harm and kill them. Father says, your Honor, like the Raptors and Earth-bound Mammals that eat poisoned Frogs and Birds, that poison kills them too.

Dkt. No. 1 at 2 (errors in original). Thereafter, in a 130-paragraph factual "addendum" to the complaint, *see* Dkt. No. 1 at 17-44, plaintiff alleges:

> [¶ 1] It is startling to see how heavily strawberries are contaminated with residues of hazardous pesticides, but even more shocking is that these residues don't violate the weak U.S. laws and regulations on pesticides in food, said Sonya Lunder, EWG Senior Analyst. The EPA's levels of residues allowed on produce are too lax to protect Americans' health. They should be updated to reflect new research that shows even very small doses of toxic chemicals can be harmful, particularly for young children.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

[¶ 2] This study is one of many that shows we know very little about the repercussive effects of pesticides once released into the environment, said Ruth Kerzee, executive director of the Midwest Pesticide Action Center, who was not involved in the study, We are told these compounds break down rapidly when exposed to sunlight and, yet, this study shows persistence in the environment long after applications.

***5** [¶ 3] Sidelined (U.S. EPA) children's health official Dr. Ruth Etzel says EPA under Trump believes kids are disposable, they don't matter - CBS News[.]

Dkt. No. 1 at 17 (internal quotation marks omitted).

Although certain citizen enforcement suits are permissible against the EPA, as the complaint is currently drafted, the court is unable to meaningfully analyze, in accordance with 28 U.S.C. § 1915(e), whether and to what extent plaintiff has pleaded a colorable claim against the EPA.[4] *See generally* Dkt. No. 1. Plaintiff's prolix pleading places an unjustified burden on the court " 'to select the relevant material from a mass of verbiage.' " *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969) ).

4 For example, the citizen suit provision of the Clean Water Act enables citizens to bring suit to force the Administrator of the EPA to perform non-discretionary duties. 33 U.S.C. § 1365(a)(2); *see generally Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992). Here, plaintiff simply alleges that the EPA has violated the spirit of the Clean Water Act because there is a probability that he and his dog are being poisoned by the widespread chemical agents. As a result, it is not clear from plaintiff's complaint what mandatory duty he alleges that the EPA has allegedly failed to perform pursuant to the Clean Water Act.
As a separate issue that is beyond the scope of this order, report, and recommendation, I note that citizen enforcement suits under the Toxic Substances Control Act, the Clean Water Act, and the Clean Air Act are each subject to certain pre-suit notice requirements. 15 U.S.C. § 2619(b)(2) (Toxic Substances Control Act); 33 U.S.C. § 1365(b)(2) (Clean Water Act); 42 U.S.C. § 7604(b)(2) (Clean Air Act). There is no indication in plaintiff's complaint that he has met those requirements.

Accordingly, I recommend the complaint be dismissed as frivolous. *See, e.g., Gillich v. Shields*, No. 18-CV-0486, 2018 WL 2926299 (N.D.N.Y. Apr. 30, 2018) (Peebles, M.J.), *report and recommendation adopted by* 2018 WL 2926302, at *3 (N.D.N.Y. Jun. 8, 2018) (D'Agostino, J.); *Canning v. Hofmann*, No. 15-CV-0493, 2015 WL 6690170, at *5 (N.D.N.Y. Nov. 2, 2015) (Hurd, J.) ("Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal."); *see also Salahuddin*, 861 F.2d at 42 ("Dismissal [for failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure] ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely

to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

***6** In this case, it is not clear whether better pleading would permit plaintiff to assert a cognizable cause of action against the EPA. Out of deference to his *pro se* status, however, I recommend that plaintiff be granted leave to amend his complaint.

If plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individuals named as defendants are involved in the allegedly unlawful activity. Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

III. SUMMARY, ORDER, AND RECOMMENDATION

For the reasons set forth above, it is hereby

ORDERED that plaintiff's *in forma pauperis* application (Dkt. No. 2) is DENIED without prejudice. In the event this report is adopted and plaintiff is granted leave to amend his complaint, any amended complaint must be accompanied by either (1) the full filing fee or (2) a new request to proceed in this action without prepayment of the filing fees in the form of a completed AO 239; and it is further respectfully

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be DISMISSED, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993).

5 If you are proceeding pro se and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1004706

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2771677
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James P. CORNELIO, Plaintiff,
v.
Rosanna ROSADO, in her official capacity, Defendant.

1:24-cv-01335 (AMN/PJE)
|
Signed September 29, 2025

**Attorneys and Law Firms**

PAUL DUBBELING, ESQ., P.M. DUBBELING, PLLC, 210 North Columbia Street, Chapel Hill, North Carolina 27514, Attorneys for Plaintiff.

HON. LETITIA JAMES, New York State Attorney General, BRITTANY M. HANER, ESQ., Assistant Attorney General, Litigation Bureau, The Capitol, Albany, New York 12224, Attorneys for Defendant.

**MEMORANDUM-DECISION AND ORDER**

Anne M. Nardacci, United States District Judge:

## I. INTRODUCTION

***1** On November 1, 2024, Plaintiff James Cornelio commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendant Rosanna Rosado, in her official capacity as the Commissioner of the New York Department of Criminal Justice Services ("DCJS"), alleging that certain reporting requirements mandated by the New York State Sex Offender Registration Act, N.Y. Corr. L. § 168 ("SORA"), violate his First Amendment rights. *See generally* Dkt. No. 1 ("Complaint"). On February 6, 2025, Defendant moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), Dkt. No. 10 ("Motion"), which Plaintiff opposed on February 27, 2025, Dkt. No. 12. On March 6, 2025, Defendant filed a letter informing the Court that she does not intend to file a reply in further support of the Motion. Dkt. No. 13. Accordingly, the Motion is now ripe for adjudication.

For the reasons set forth below, the Motion is granted in part and denied in part.

## II. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *see Williams v. N.Y.C. Hous. Auth.*, 816 Fed. Appx. 532, 534 (2d Cir. 2020).

### A. The Parties

Plaintiff is a resident of the State of Connecticut who, in 2005, was convicted in New York State of one count of a criminal sexual act in violation of N.Y. Penal Law § 130.45 and ten counts of possessing a sexual performance by a child in violation of N.Y. Penal Law § 263.16. *See* Dkt. No. 1 at ¶¶ 6, 51. Plaintiff states that he currently "does not live, work, or regularly visit the State of New York" and "has no remaining ties to New York [S]tate." *Id.* at ¶¶ 6, 56. However, because of his 2005 convictions,

Plaintiff has been designated as a "level two" sex offender in New York and accordingly must comply with certain mandates under SORA, which include, *inter alia*, periodic reports to New York's DCJS such as "annual verification, photograph updates, and notice of changes" as well as reporting certain information pertaining to his internet use. *Id.* at ¶ 57; *see also* N.Y. Corr. L. § 168-b. Plaintiff's failure to comply with these mandates is considered a strict liability felony under New York law. *Id.*; *see also* N.Y. Corr. L. § 168-t.

Defendant, "[b]y information and belief," is a resident of the Northern District of New York and currently serves as the Commissioner of DCJS, which is the state agency responsible for the administration of the New York State Sex Offender Registry ("Registry"). *Id.* at ¶¶ 4, 8-9; *see also* N.Y. Corr. L. § 168-b(1). In her capacity as Commissioner, Defendant is in "sole charge of the administration" of DCJS. *Id.* at ¶ 10 (citing N.Y. Exec. L. § 836(2)).

**B. The Complaint**

Plaintiff alleges that certain of SORA's reporting requirements violate his First Amendment rights.

***2** First, Plaintiff avers that the obligation to report to DCJS "a list of 'internet accounts' and 'internet identifiers,' "[1] burdens speech protected under the First Amendment. Dkt. No. 1 at ¶¶ 62-71. Accordingly, Plaintiff argues that this reporting requirement is subject to heightened constitutional scrutiny, which the requirement cannot survive because it (i) fails to advance important governmental interests; (ii) substantially burdens more speech than is necessary to further those interests; (iii) is not narrowly tailored to achieve those interests; (iv) is not the least restrictive means of advancing those interests; and (v) is overbroad. *Id.* at ¶¶ 65-70.

1 "Internet Identifiers" is defined under New York law as "electronic mail address and designations used for the purposes of chat, instant messaging, social networking, or other similar internet communication." N.Y. Corr. L. § 168-a(17).

Second, Plaintiff states that the obligation for registrants "who do not live, work, attend school, and who are not otherwise regularly present in the State of New York," to provide information such as their home address, place of employment, and photographs, to DCJS constitutes compelled speech in violation of the First Amendment. *Id.* at ¶¶ 72-80. Plaintiff contends that, because DCJS publishes this registration information on its website, alongside a message that "the registrant is a danger to the public," the reporting requirement obligates the out-of-state registrant "to participate in the public dissemination of a specific message" about them. *Id.* at ¶¶ 75-77. Plaintiff states that the collection and publication of this information (i) does not advance any compelling government interest; and (ii) if it does, is not the least restrictive means to advance that compelling government interest. *Id.* at ¶¶ 78-79.

Plaintiff seeks (i) declaratory judgments pronouncing that the above-mentioned reporting requirements are unconstitutional under the First Amendment; (ii) injunctive relief prohibiting Defendant and/or DCJS from collecting and publishing the above-mentioned registration information; as well as (iii) his attorneys' fees and costs. *Id.* at 13-14.[2]

2 Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

**III. STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

(alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' ' " *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

## IV. DISCUSSION

### A. Conversion Under Fed. R. Civ. P. 12(d)

***3** The Court first addresses Plaintiff's argument that the Motion should "be treated as a motion for summary judgment." Dkt. No. 12 at 2. Plaintiff contends that this is the case because Defendant has submitted a declaration from Michelle Mulligan, Chief of Identification Operations for the Registry at DCJS, *see generally* Dkt. No. 10-2 ("Mulligan Declaration"), in support of the Motion.

Under Fed. R. Civ. P. 12(d), when parties present evidence outside of the pleadings on a motion to dismiss, courts must either (1) decide the motion based on the complaint alone, without considering the additional material; or (2) convert the motion to one for summary judgment under Fed. R. Civ. P. 56. *See Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000). "Attachment of an affidavit or exhibit to a Rule 12(b)(6) motion, however, does not without more establish that conversion is required." *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999). Where the court does not rely on the extrinsic evidence in adjudicating the motion to dismiss, or where the "information had no impact whatsoever" on the court's 12(b)(6) analysis, conversion is unnecessary. *Id.* at 51; *see also Taylor v. Westor Capital Grp.*, 943 F. Supp. 2d 397, 399-400 (S.D.N.Y. 2013) (citing cases).

Here, as will be made clear by the ensuing analysis, the Court declines to consider the Mulligan Declaration and the evidence cited therein in deciding the Motion. Accordingly, it is appropriate for the Court to proceed under Fed. R. Civ. P. 12(b)(6) and Plaintiff's request for conversion under Fed. R. Civ. P. 12(d) is denied.

### B. Substantive Arguments Under Fed. R. 12(b)(6)

The Motion consists of two main substantive arguments. First, Defendant contends that Plaintiff cannot plausibly assert a First Amendment compelled speech claim because a New York appellate court determined in 2011 that SORA lawfully applies to out-of-state residents. *See* Dkt. No. 10-1 at 7-8 (discussing *In re Doe v. O'Donnell*, 86 A.D.3d 238 (3d Dep't 2011), *lv. denied*, 17 N.Y.3d 713 (2011)). And second, Defendant contends that Plaintiff's First Amendment claim concerning SORA's internet identifier disclosure requirement should be dismissed because the requirement does not burden substantially more speech than is necessary to further an important government interest. *Id.* at 8-10. The Court addresses each argument in turn.

#### i. Plaintiff's Compelled Speech Claim

With regard to the compelled speech claim, Plaintiff alleges that since SORA requires "[r]egistrants who do not live, work, attend school, and who are not otherwise regularly present in the State of New York ... to provide information to" DCJS, which DCJS then "largely publish[es]" for registrants who are designated as "level two" or "level three" offenders alongside a message that such registrants are a danger to the public, the statute compels speech from registrants in violation of the First Amendment. Dkt. No. 1 at ¶¶ 72-80 (SORA "requires the registrant, on an ongoing basis, to participate in the public dissemination of a specific message about the registrant."). Plaintiff alleges that DCJS maintains a website that publishes " 'the [registrant's] exact address, address of the registrant's place of employment and photograph' as well as [the registrant's] 'name, physical description, age, and distinctive markings' and 'background information' regarding the registrant's criminal conviction," in addition to information about the registrant's vehicle. *Id.* at ¶¶ 44-45 (citing N.Y. Corr. L. § 168-q).[3] Plaintiff alleges that the collection

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

and publication of this information from out-of-state residents violates the First Amendment because it does not advance a compelling government interest and, even if it does, the manner in which it is collected and published is not the least restrictive means to advance that interest. *Id.*

3 Plaintiff does not allege that DCJS publishes internet identifier information collected pursuant to N.Y. Corr. L. § 168-b(1)(a). *See also* Dkt. No. 10 at 9 ("Internet information is not released to the public."). Accordingly, Plaintiff's compelled speech claim concerns only the non-internet-related information that is collected and published by DCJS for purposes of registration.

***4** Since the Supreme Court's decision in *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943), courts have recognized the "firm constitutional doctrine that the state cannot constitutionally compel individuals to speak or think in prescribed ways." *Carroll v. Blinken*, 957 F.2d 991, 995 (2d Cir. 1992) (citing *Barnette*, 319 U.S. at 645), *overruled in part on other grounds*, 585 U.S. 878 (2018). This doctrine protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). "To force a person to speak, and compel participation, is a severe intrusion on the liberty and intellectual privacy of the individual. Just as compelled silence will extinguish the individual's right of expression, compelled speech will vitiate the individual's decision either to express a perspective by means of silence, or to remain humbly absent from the arena." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018).

In assessing laws that are found to compel protected speech, courts apply differing levels of scrutiny depending on "the type of speech at issue." *CompassCare v. Hochul*, 125 F.4th 49, 63 (2d Cir. 2025) (citing *Riley v. Nat'l Fed'n for the Blind of N.C., Inc.*, 487 U.S. 781, 787 (1988)). " 'Government action that stifles speech on account of its message, or that requires the utterance of a particular message favored by the Government, contravenes' the right of each person to 'decide for himself or herself the ideas and beliefs deserving of expression,' and is subject to 'the most exacting scrutiny.' " *Id.* (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641-42 (1994)). On the other hand, regulations on "matters unrelated to speech and [that] only incidentally affect First Amendment rights" receive a lower form of scrutiny. *Bd. of Managers of Soho Intern. Arts Condo. v. City of N.Y.*, No. 01-Civ-1226, 2004 WL 1982520, at *10 (S.D.N.Y. Sept. 8, 2004) (citing *Turner*, 512 U.S. 643).

Prior to engaging in any form of scrutiny, however, courts must first determine whether the implicated regulation actually affects speech or, in the alternative, affects conduct that indirectly impacts speech. *See Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986) (determining whether speech rights apply first requires finding whether the conduct with a "significant expressive element" drew the legal remedy or the regulation "has the inevitable effect of singling out those engaged in expressive activity"). In *Maynard*, the Supreme Court clarified that a state violates an individual's protection from compelled speech either "[i] by forcing an individual through speech to affirm a religious, political, or ideological cause that the individual did not believe in; or [ii] by forcing an individual as a part of his daily life to be an instrument for fostering public adherence to an ideological point of view in which he did not believe." *Medina v. Cuomo*, No. 7:15-CV-01283, 2015 WL 13744627, at *10 (N.D.N.Y. Nov. 9, 2015), *report and recommendation adopted*, 2016 WL 756539 (Feb. 25, 2016) (citing *Maynard*, 430 U.S. at 715). Thus, to state a claim, a plaintiff must allege a "set of facts where the state forces "an individual [to] personally speak the government's message" or "force[s] one speaker to host or accommodate another speaker's message." *Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc.*, 546 U.S. 47, 63 (2006); *see also Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005) (state actors may not compel a person to utter a message with which the person does not agree); *Wooley*, 430 U.S. at 715 (test of whether the state has violated an individual's right to refrain from speaking is "whether the individual is forced to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable.").

***5** Here, the Complaint does not adequately set forth how the collection and publication of the registration information detailed above compels speech that is protected under the First Amendment. Plaintiff does not assert, for example, that the collection of a registrant's address, place of employment, physical appearance, or the details of his or her relevant conviction in any way affirms the registrant's "religious, political [or] ideological cause," or that such information forces the registrant to foster "an ideological point of view [that] he [or she] finds unacceptable." *Barnette*, 319 U.S. at 715. Nor is it likely that Plaintiff could make such an assertion, as the Court is unaware of any controlling precedent that has held that the mere collection and dissemination of this type of factual information constitutes a compelled speech violation. *C.f., Wooley*, 430 U.S. at 715 (law

requiring license plates to show the state's motto "Live Free or Die" violated the First Amendment); *Pacific Gas & Electric Co. (PG&E) v. Public Utils. Comm'n of Cal.*, 475 U.S. 1, 14 (1986) (order requiring the state's privately-owned utility provider to include in its billing envelopes political editorials of a third-party interest group with which the provider disagreed was unconstitutional); *Riley*, 487 U.S. at 798 (regulation requiring charity fundraisers to disclose to potential donors the percentage of contributions collected during the previous year that were actually given to charity was unconstitutional, since requirement would necessarily hamper charitable solicitation, which the Court reasoned is "characteristically intertwined with informative and perhaps persuasive speech"); *Nat'l Inst. of Family & Life Advocs. v. Becerra*, 585 U.S. 755, 776-77 (2018) (law requiring clinics that serve pregnant women to notify clients that California provides low-cost services, including abortions, violated the First Amendment). Put simply, the type of information that is collected and published by DCJS is not the type of "speech" that courts have traditionally recognized as protected under the First Amendment. Thus, Plaintiff fails to state a plausible claim for a compelled speech violation. Moreover, while the Complaint correlates the collection and dissemination of this information with the fact that Plaintiff no longer resides or associates with New York State, the Court is unable to discern how that fact alters the analysis. As outlined above, the examination of a compelled speech claim turns on the *type* of speech that is at issue, not the location from which that speech is transmitted. *See CompassCare*, 125 F.4th at 63. In other words, if the Court were to find that New York's collection and dissemination of a registrant's address, place of employment, physical appearance, or the details of his or her relevant conviction violated the First Amendment, such a holding would arguably apply to both residents and non-residents.

Regardless, even if Plaintiff could adequately plead that providing this type of information to the state constituted compelled speech, the claim still fails because this Court has previously adopted holdings from the Fifth and Eighth Circuits finding that "there is no right to refrain from speaking when essential operations of government require it for the preservation of an orderly society as in the case of compulsion to give evidence in court." *Medina*, 2015 WL 13744627, at *10 (quoting *United States v. Sindel*, 53 F.3d 874 (8th Cir. 1995)). Under that logic, as was recognized in *Sindel* and *United States v. Arnold*, 740 F.3d 1032 (5th Cir. 2014), "when the government, to protect the public, requires sex offenders to register their residence, it conducts an essential operation of the government, just as when it requires individuals to disclose information for tax collection." *Medina*, 2015 WL 13744627, at *10 (quoting *Arnold*, 740 F.3d at 1035). Here, as in *Medina*, the Court finds the reasoning outlined in *Sindel* and *Arnold* applicable to the information that is the subject of Plaintiff's compelled speech claim. [4]

4 In a similar vein, Plaintiff's allegation that "[i]n publishing the information, the government specifically makes the claim that the registrant is dangerous to the public," Dkt. No.1 at ¶ 76, does not alter the Court's conclusion. When the "government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Tex. Div., Sons of the Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (citation omitted). "When the government wishes to state an opinion, to speak for the community, to formulate politics, or to implement programs, it naturally chooses what to say and what not to say." *Shurtleff v. Boston*, 596 U.S. 243, 251 (2022). Thus, "[g]overnment speech may adopt a particular viewpoint, so long as it does not coerce private speakers into espousing a certain view." *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 108 (3d Cir. 2022) (citing *Walker*, 576 U.S. at 207-08). Accordingly, having already found that the collection and dissemination of this category of information does not force Plaintiff to adhere to any ideological point of view, the compelled speech claim fails regardless of the fact that New York may use that information to adopt a particular viewpoint or opinion regarding Plaintiff's safety to the community.

The Court notes, however, that it agrees with Plaintiff, albeit for different reasons, that the New York Appellate Division's 2011 ruling in *O'Donnell* is distinguishable from the instant action. There, the petitioner sought to annul DCJS's determination that he should continue to register as a sex offender in New York even though he had relocated to Virginia following his conviction, claiming that the requirement was an overreach of DCJS's statutory authority under SORA and violated the Full Faith and Credit Clause of the U.S. Constitution. *O'Donnell*, 86 A.D.3d at 240, 243. In analyzing specific provisions of SORA, the Appellate Division concluded that "the statute's dual purposes of monitoring sex offenders' whereabouts and aiding law enforcement in prosecuting recidivist offenders would be frustrated if a sex offender's registration obligations were to cease when he or she moves out of the state." *Id.* at 241-42. Moreover, the court found that the Full Faith and Credit Clause was not implicated since

"New York and Virginia [ ] each separately adjudicated the risk posed by petitioner to their respective citizens and imposed registration requirements upon petitioner pursuant to each state's sex offender registration law." *Id.* at 243. Unlike the instant action, the *O'Donnell* court did not consider the question of whether the petitioner's registration requirements in New York constitute compelled speech or violate the First Amendment. Thus, the decision is of no import here.

***6** For the reasons outlined above, the Court finds that Plaintiff has failed to state a compelled speech claim and, accordingly, grants the portion of Defendant's Motion seeking to dismiss that claim.

**ii. Plaintiff's First Amendment Claim Regarding SORA's Internet Identifier Disclosure Requirement**

Consistent with recent Second Circuit precedent, however, the Court reaches a different conclusion with respect to the First Amendment implications of SORA's internet identifier disclosure requirement. According to Plaintiff, upon registration, DCJS maintains a file of each registrant that contains, *inter alia*, the registrant's "internet accounts with internet access providers ... [and] internet identifiers that such [registrant] uses." Dkt. No. 1 at ¶¶ 13-14 (quoting N.Y. Corr. L. § 168-b(1)(a)). A registrant is also continually required to notify DCJS of any changes to that information within ten calendar days or risk being prosecuted for a Class E felony. *Id.* at ¶¶ 18, 25 (citing N.Y. Corr. L. §§ 168-f(4), 168-t). Plaintiff claims that the internet identifier disclosure requirement constitutes an improper burden on speech in violation of the First Amendment. *Id.* at 10.

As both Parties acknowledge, Plaintiff successfully brought a cause of action in the District of Connecticut challenging similar provisions of Connecticut's sex offender registry laws in 2020. *See Cornelio v. Conn.*, 32 F.4th 160 (2d Cir. 2022). In that case, the district court concluded that the statutory requirement at issue burdened free speech, but that the statute survived review under intermediate scrutiny. *Id.* at 172. The Second Circuit agreed that Connecticut's internet identifier disclosure requirement under its sex offender registration law, Conn. Gen. Stat. § 54-250 *et seq.*, hampered speech protected by the First Amendment, finding that it: (i) burdened a registrant's "ability and willingness to speak on the Internet," *Cornelio*, 32 F.4th at 169 (quoting *Doe v. Harris*, 772 F.3d 563, 572 (9th Cir. 2014)); (ii) "applie[d] specifically to speakers engaged in online communication," and therefore targeted "conduct with a significant expressive element," *id.* (quoting *Arcara*, 478 U.S. at 706-07); and (iii) "prevent[ed] a registrant from speaking anonymously," *id.* at 169-70 (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)). In performing the intermediate scrutiny analysis, [5] the Second Circuit noted the state's burden in cases such as this to "identify evidence—or, at least provide 'sound reasoning' that 'draws reasonable inferences based on substantial evidence' "—that the law advances an important governmental interest unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests. *Id.* at 171 ("To establish that the law advances important governmental interests, the government 'must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.' ") (quoting *Turner* 512 U.S. at 641). Given that evidentiary burden, the Second Circuit recounted that "[t]he dismissal of a claim challenging a law that abridges protected speech will rarely, if ever, be appropriate at the pleading stage. Instead, factual development will likely be indispensable to the assessment of whether [such a law] is constitutionally permissible." *Id.* at 172 (internal quotations and citations omitted). Thus, because Connecticut had yet "to identify some empirical basis for believing that the disclosure requirement materially advance[d] an important governmental interest," and was unable to "demonstrate that a less burdensome alternative ... would not advance the asserted governmental interest," the Second Circuit held that the district court erred in concluding on a motion to dismiss that the disclosure requirement survived intermediate scrutiny. *Id.* at 174-175 ("The government may be able to identify some empirical basis for believing that the disclosure requirement materially advances an important governmental interest. At this stage, however, Cornelio has stated a plausible claim."). The Court sees no reason to depart from that reasoning here.

5 The Second Circuit did not address the issue of whether strict or intermediate scrutiny applied to this type of disclosure requirement, primarily because Plaintiff chose not to contest the district court's application of intermediate scrutiny and since Plaintiff "state[d] a plausible claim under intermediate scrutiny, the level of scrutiny [did] not alter [the] decision." *Id.* at 170-71 (citing, *inter alia, McCutcheon v. FEC*, 572 U.S. 185, 199 468 (2014) (plurality opinion)).

***7** As an initial matter, despite Defendant's argument to the contrary, Connecticut's internet identifier disclosure requirement is almost identical to SORA's. Both require a registrant to provide a state agency with personal email addresses, instant message accounts, and other similar internet communication identifiers. *Compare* Conn. Gen. Stat. § 54-251(a), *with* N.Y. Corr. L. § 168-b(1)(a). Both require the registrant to update the state agency if the registrant modifies or establishes new internet identifiers. *Compare* Conn. Gen. Stat. § 54-253(b), *with* N.Y. Corr. L. § 168-f(4). And both carry felony consequences for failure to comply. *Compare* Conn. Gen. Stat. § 54-253(e), *with* N.Y. Cor. L. § 168-t. Most notably, the "important governmental interest" set forth by Defendants in this case and in the Connecticut case is identical: to deter registrants from using the internet to engage in further crimes. *See Cornelio*, 32 F.4th at 172-73. Thus, the Court finds no basis to dismiss this action at this stage. *See id.* at 172.

Moreover, the Court declines to consider the argument presented by Defendant concerning the New York Legislature's amendment of SORA in 2008 to permit social networking sites to apply to DCJS to receive internet identifiers of registered sex offenders, which allegedly enables them to directly remove registrants from their websites. Defendant relies on the Mulligan Declaration to make this argument. *See* Dkt. No. 10-1 at 9 (social media sites can use DCJS data to "remove offenders from internet spaces where they would otherwise have the ability to contact potential victims."). Defendant contends that the 2008 amendment distinguishes SORA from the Connecticut statute, which permitted only law enforcement to access such information. *Id.* Defendant further contends that the Connecticut defendants were unable to produce any evidence that the regulation at issue was actually aiding in the removal of registrants from the internet or otherwise supporting the deterrence interest in any manner given the Connecticut statute's lack of a similar provision. *Id.* Although the Court declines to consider this argument, which is premised on the information presented in the Mulligan Declaration, it notes that even if it were to do so, the Mulligan Declaration would be an insufficient basis on which to grant the Motion. First, the Mulligan Declaration attaches a single email between DCJS representatives from 2010 that avers that, at some point in time, nearly 4,000 registrants were removed from unnamed social networking sites. *See* Dkt. No. 10-2. As Plaintiff points out, Defendant has not shown that any social networking sites are actively using Registry data to remove registrants from their sites. *See* Dkt. No. 12 at 7 ("[I]t appears that New York State stopped engaging with new websites more than a decade ago and there is no evidence that in the last fifteen (15) years these websites have used this information at all."). Moreover, even if the Mulligan Declaration could establish that SORA sufficiently advances the purported deterrence objective, Defendant has not shown, at this juncture, that the internet identifier disclosure requirement "does not burden substantially more speech than necessary to further" that objective. *See Cornelio*, 32 F.4th at 175 (finding that the Connecticut disclosure requirement "appears to be overbroad because it applies to all persons subject to the sex offender registration law, including registrants who have never engaged in the sort of illicit online activity that the government seeks to deter").

Accordingly, consistent with the Second Circuit's holding in *Cornelio v. Conn.*, 32 F.4th 160 (2d Cir. 2022), the portion of Defendant's motion seeking to dismiss Plaintiff's First Amendment claim regarding SORA's internet identifier disclosure requirement is denied.

## V. CONCLUSION

***8** Accordingly, the Court hereby

**ORDERS** that Defendant's motion to dismiss, Dkt. No. 10, is **GRANTED IN PART AND DENIED IN PART**; and the Court further

**ORDERS** that Plaintiff's First Amendment compelled speech claim is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2771677

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,
v.
Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

***1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

1 Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

## I. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

2 To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also*

*Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

***2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Analysis of the Complaint

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

***3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

3 If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.

FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17517312

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,
v.
Jonathan ROBBINS, Jean-Max Bellerive, Josue Pierre-Louis, Garry Conille, Jean-Claude Theogene, Barthelemy Anteno, Kwasi Amoako-Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

## ORDER

Mae A. D'Agostino, United States District Judge:

***1** On November 22, 2022, *pro se* Plaintiff Manetirony Clervrain ("Plaintiff") filed a complaint against Defendants consisting of 70 pages of forms and documents, *see* Dkt. No. 1, "recit[ing] a wide variety of federal statutes and case law," Dkt. No. 7 at 5, and around two hundred pages of attachments. *See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No. 2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart granted Plaintiff's motion to proceed IFP. *See* Dkt. No. 6. Additionally, Magistrate Judge Stewart issued a Report-Recommendation and Order recommending that the complaint be dismissed with leave to amend. *See* Dkt. No. 7. Plaintiff has not filed an objection to the Report-Recommendation and Order.

When a party declines to file objections to a magistrate judge's report-recommendation or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the district court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-Recommendation and Order, Plaintiff's complaint and the applicable law, the Court finds that Magistrate Judge Stewart correctly determined that the complaint should be dismissed. The complaint is largely incomprehensible and suffers from several deficiencies. Rule 8(a) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint is neither short nor plain. *See* Dkt. No. 1. As currently drafted, and even with the leniency given

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

to a *pro se* litigant's pleadings, Plaintiff failed to meet pleading standards such that the Court is unable to meaningfully analyze whether Plaintiff can allege any colorable claim against Defendants. *See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL 6690170, *5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

***2** Finally, the Court agrees with Magistrate Judge Stewart that Plaintiff should be granted an opportunity to amend out of deference to Plaintiff's *pro se* status. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim' ") (quotation omitted). Should Plaintiff choose to amend the complaint, the Court urges Plaintiff to review Magistrate Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3170384

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.